IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| **SKM RESTAURANTS, INC.**  )<br>**d/b/a TOAD'S PLACE**  )<br>    )<br>    Plaintiffs  )<br>    )<br>v.  )<br>    )<br>    )<br>    )<br>**LEXINGTON INSURANCE COMPANY**  )<br>    )<br>    Defendants  ) | <br><br><br><br><br><br><br>**JURY TRIAL**<br>**DEMANDED**<br><br><br>MARCH 8, 2022 |

## COMPLAINT

Plaintiff, SKM Restaurants, Inc. d/b/a Toad's Place ("Plaintiff"), brings this action against Defendant, Lexington Insurance Company ("Defendant"), and in support thereof states and alleges the following:

**I.   INTRODUCTION**

This case concerns whether Plaintiff's losses and expenses resulting from the necessary interruption of business conducted at its bar and performance venue caused by direct physical loss due to the consequences of the ongoing COVID-19 Pandemic are covered under the Defendant's Manuscript All-Risk Form. As more specifically pled herein, the Defendant agreed to pay for the Business Interruption Loss, Expense to Reduce Loss, Extra Expense and Rental Value loss that the Plaintiff sustained due to the necessary interruption of business at its bar and performance venue caused by direct physical loss or damage to covered property.

Defendant has breached the contract, the implied covenant of good faith and fair dealing, and violated CUIPA/CUTPA by wrongfully denying, in bad faith, Plaintiff's claims for its losses.

## II.     NATURE OF THE ACTION

1. This action arises out of Defendant's failure to honor its agreement to provide insurance coverage for the losses sustained and expenses incurred by Plaintiff due to the necessary suspension of operations at its bar and performance venue caused by the ongoing Pandemic.

2. For many years, Plaintiff has operated a popular bar and performance venue known as Toad's Place in New Haven, Connecticut. Since March 2020, Plaintiff's routine business operations have been suspended or limited as a result of the Pandemic.

3. To protect its business in the event that it was suddenly forced to suspend routine business operations because of natural disasters for reasons outside of its control, or in order to prevent loss or damage, Plaintiff purchased insurance coverage from Defendant, including property coverage, as set forth in Defendant's Manuscript All Risk Form.

4. The Defendant's coverage form provides that the "policy insures against all risks of direct physical loss of or damage to property described herein including general average, salvage and all other similar charges on shipments covered hereunder, if any, except as hereinafter excluded".

DANAHERLAGNESE, PC • 21 OAK STREET, HARTFORD, CT 06106 • (860) 247-3666

5. Defendant's coverage form provides "Business Interruption" coverage which promises to pay for "loss resulting from necessary interruption of business conducted by the Insured and caused by direct physical loss or damage by any of the perils covered herein during the term of this policy".

6. Defendant's coverage form provides "Expense to Reduce Loss" coverage, which promises to pay for "such expenses as are necessarily incurred for the purpose of reducing any Business Interruption loss under this policy".

7. Defendant's coverage form provides "Extra Expense" coverage, which promises to pay for "excess cost necessarily incurred to continue the operation of the Insured's business or facility that would not have incurred had there been no loss or damage by any of the perils covered herein during the term of this policy".

8. Defendant's coverage form, under section titled "Sue and Labor" provides that it "shall be lawful and necessary for the Insured…to sue, labor, and travel for, in, and about the defense, the safeguard and the recovery of the property, or any part of the property, insured hereunder without prejudice to this insurance; nor in the event of loss or damage, shall the acts of the Insured or the Company in recovery, saving, and preserving the insured property be considered a waiver or an acceptance of abandonment. The expenses so incurred shall be borne by the Insured and the Company in accordance with the policy conditions in regard to losses including deductible application".

DANAHERLAGNESE, PC • 21 OAK STREET, HARTFORD, CT 06106 • (860) 247-3666

9. Defendant's coverage form provides "Rental Value" coverage which promises to pay for, inter alia, "loss sustained by the Insured resulting directly from the necessary untenantability, during the period of restoration, caused by loss, damage or destruction by any of the perils covered herein during the term of this policy" including "the fair rental value of any portion of said property which is occupied by the Insured".

10. Since March 2020, Plaintiff has incurred loss resulting from necessary interruption of its business including multiple cancellations of different events caused by direct physical loss of covered property as a result of the Pandemic.

11. In addition, Plaintiff incurred expenses to protect the Covered Property from the impact of the Pandemic.

12. The Defendant has refused to pay the Plaintiff under its Business Interruption, Expense to Reduce Loss, Extra Expense, Rental Value, and Sue and Labor coverages for losses suffered due to the Pandemic, and any efforts to prevent loss or damage or to minimize the suspension of business and continue operations. In particular, the Defendant has denied claims submitted by Plaintiff under its Policy.

### III. **THE PARTIES**

13. SKM Restaurants, Inc. d/b/a Toad's Place is a corporation organized, incorporated and existing under the laws of Connecticut and has a principal place of business in New Haven, Connecticut.

DANAHERLAGNESE, PC • 21 OAK STREET, HARTFORD, CT 06106 • (860) 247-3666

14. Lexington Insurance Company is a foreign corporation organized, incorporated and existing under the laws of Delaware and has a principal place of business at 99 High Street, Boston Massachusetts.

## IV.  JURISDICTION AND VENUE

15. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because Plaintiff and Defendant are citizens of different states, and because the amount in controversy exceeds $75,000.00 exclusive of interest and costs, and no relevant exceptions apply to this claim.

16. Venue is proper in this District under 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to the claims occurred, or a substantial part of property that is the subject of this action is situated in this judicial district. The Policy at issue covers Plaintiff's facility located in the State of Connecticut and Plaintiff purchased the Policy at issue from an insurance broker in the State of Connecticut.

## V.  FACTUAL BACKGROUND

### The Insurance Policy

17. In return for the payment of a premium, Lexington Insurance Company issued Policy No. 025941582-05 to SKM Restaurants, Inc. d/b/a Toad's Place for the policy period December 6, 2019 to December 6, 2020. The Policy contains a Manuscript All Risk Form. Policy No. 025941582-05 is attached hereto and incorporated by reference as *Exhibit 1* (the "Policy").

18. Plaintiff is the Named Insured under the Policy, which remains in force.

19. Defendant is the effective and liable insurer under the Policy.

20. Plaintiff has performed all of its obligations under the Policy including the payment of premiums and cooperation in Defendant's claims investigation and preservation of the property.

21. Sometimes property insurance is sold on a specific peril basis, where coverage is limited to risks of loss that are specifically listed (e.g., hurricane, earthquake, etc.). Many property policies sold in the United States, however, including those sold by Defendant, are "all-risk" property damage policies. All-risk policies provide a special kind of coverage extending to risks not usually contemplated. These types of policies cover all risks of loss except for risks that are expressly and specifically excluded or limited by other portions of the Policy.

22. Under the Manuscript All Risk Form, Defendant insures losses occurring during the Policy Period subject to the terms, conditions, definitions, exclusions, limitations, and provisions contained therein.

23. The Defendant agreed that "this Policy covers: …. The interest of the Insured in all Real and/or Personal Property, including improvements and betterments and alterations owned or used by the Insured, as stated in the Schedule and/or Declarations attached to and forming a part of the policy or hereinafter constructed, erected, installed or acquired".

24. Under the Policy, Defendant agreed to pay for "loss resulting from necessary interruption of business conducted by the Insured and caused by direct physical loss or damage by any of the perils covered herein".

25. Defendant also agreed to pay such expenses as are necessarily incurred for the purpose of reducing any Business Interruption loss.

26. Direct physical loss or damage caused by the Pandemic triggered coverage under the Business Interruption, Expenses to Reduce Loss, Rental Value and Sue and Labor provisions under the Policy.

27. The Defendant also agreed to pay for the fair rental value of any portion of the covered property which is occupied by the Insured.

28. The Defendant also agreed to pay for the excess cost necessarily incurred to continue the operation of the Insured's business or facility that would not have been incurred had there been no loss or damage.

29. Since March 2020, the Pandemic has been pervasive throughout Connecticut, particularly in bars and performance venues where there is greater risk because of the nature of their operations, including patrons and staff being in close proximity to each other.

30. Plaintiff has suspended, in whole or in part, operations at the covered property thereby incurring direct physical loss of the use of the covered location and incurred substantial loss. The suspension, resulting in physical loss of covered property, was intended and necessary to protect people from serious injury,

including death. Plaintiff also incurred reasonable costs for emergency measures to protect covered property from further damage caused by the Pandemic.

31. The Pandemic has resulted in the necessary business interruption of Toad's Place including, without limitation, cancellations of the following performances:

- Juaz
  Sunday, March 8, 2020

- Riders on the Storm
  Friday, March 13, 2020

- Bear Grillz & Phiso
  Saturday, March 14, 2020

- DJ Buck's Birthday Bashment
  Sunday, March 15, 2020

- Rod Wave: Ghetto Gospel Tour
  Thursday, March 19, 2020

- Paradise Fontaine
  Sunday, March 22, 2020

- Pop Smoke: Meet the Woo Tour
  Friday, March 27, 2020

- Blacklight Glow Party
  Friday, March 27, 2020

- Lil-Mosey
  Sunday, March 29, 2020

- Cousin Stizz
  Tuesday, March 31, 2020

- Amani White & Japanese Breakfast
  Friday, April 10, 2020

- Caspa & Brightside
  Friday, April 24, 2020

- Movements
  Saturday, May 9, 2020

- Iration
  Wednesday, May 13, 2020

- EMO Night
  Thursday, May 28, 020

- Angles & Airwaves
  Saturday, May 30, 2020

- Jeremy Zucker – Love is Not Dying Tour
  Saturday, June 13, 2020

- The Wonder Years
  Saturday, July 16, 2020

- Zach Deputy
  Saturday, August 1, 2020

- Fetty Wap - The King Zoo Tour
  Saturday, August 8, 2020

32. The Pandemic has also resulted in the cancellations of 23 private parties, nine (9) Saturday Night Dance Parties, 9 Wednesday Night Yale Dance Parties and Yale's Erotica Exotica.

33. The Defendant's Policy does not define the word "occurrence".

34. Each cancellation of a performance or event identified in Paragraphs 31 and 32 constitute separate losses and separate occurrences.

35. Plaintiff does not claim that direct physical loss or damage to its covered property has been caused by viral contamination or pollution.

9

36. The Pollution, Contamination, Debris Removal Exclusion Endorsement contained in the Policy does not exclude Plaintiff's claim because Plaintiff does not claim that the direct physical loss or damage to its covered property was caused by viral contamination or pollution.

37. The Pollution, Contamination, Debris Removal Exclusion Endorsement does not exclude loss or damage caused by a pandemic.

38. The word "pandemic" does not appear in the Policy.

39. The insurance industry employs a different endorsement to exclude direct physical loss or damage caused by a pandemic. The ISO Crisis Event Expense Coverage Endorsement, FA 283 05 16 contains an exclusion that applies to "losses attributable to…Avian Influenza…Influenza…Severe Acute Respiratory Syndrome…or any pandemic or similar influenza which is defined by the United States Center for Disease Control as virulent human influenza that may cause global outbreak, or pandemic, or serious illness". A copy of the Crisis Event Expense Endorsement FA 283 05 16 is attached hereto and incorporated by reference as *Exhibit 2*.

40. The Policy does not contain an exclusion for direct physical loss or damage caused by any pandemic.

**The Pandemic and the Covered Cause of Loss**

41. The World Health Organization has declared the existence of a Pandemic.

DANAHERLAGNESE, PC • 21 OAK STREET, HARTFORD, CT 06106 • (860) 247-3666

42. The Pandemic is a public health crisis that has profoundly impacted American society, including the public's ability to safely congregate in public places including Plaintiff's bar and performance venue.

43. Plaintiff was forced to cancel multiple engagements to prevent patrons and employees from unsafely congregating in enclosed areas on covered property.

44. Plaintiff has incurred loss resulting from necessary interruption of its business caused by direct physical loss of covered property as a result of the Pandemic.

45. Plaintiff pleads all theories of liability in the alternative or cumulatively.

### The Pandemic Caused a Direct Physical Loss of or Damage to the Property

46. Loss of use of tangible property constitutes "direct physical loss of or damage to property" for purposes of first-party property insurance.

47. As the drafter of the Policy, if the Defendant had wished to exclude the loss of use of tangible property that has not been physically altered or deformed it could have used explicit language stating such a definition, but it did not do so.

48. The Pandemic has caused "direct physical loss of or damage to property" under the Policy by causing the necessary interruption of multiple engagements during the restoration period.

49. The Pandemic and the resulting interruption and limitation of operations has caused the Plaintiffs' loss of Earnings and Extra Expense.

50. The Pandemic, and the resulting inability for people to congregate has caused Plaintiff's covered property to become untenantable.

51. The Pandemic has caused "direct physical loss of or damage to property at a 'covered location'" under the Policy by causing the necessary interruption of Plaintiffs' business as a result of a covered peril.

52. Merriam-Webster defines the word "or" as a disjunctive conjunction. *Disjunctive*, MERRIAM WEBSTER DICTIONARY, https://merriam-webster/com/dictionary/disjunctive (last visited March 3, 2022).

53. Merriam-Webster defines the word "disjunctive" as "expressing an alternative or opposition between the meanings of the words connected" and "expressed by mutually exclusive alternatives joined by *or*". *Disjunctive*, MERRIAM WEBSTER DICTIONARY, https://merriam-webster.com/dictionary/disjunctive (last visited March 3, 2022).

54. Using the Merriam-Webster Dictionary, when reading the phrase "direct physical loss of, or damage to property", it is reasonable for the Plaintiffs to interpret the phrase "physical loss" as meaning "an alternative or opposition" to the phrase "physical damage".

55. Using the Merriam-Webster Dictionary, when reading the phrase "direct physical loss of or damage to property", it is reasonable for the Plaintiffs to

interpret the phrase "physical loss" as meaning something "mutually exclusive" from the phrase "physical damage".

56. Using the Merriam-Webster Dictionary, when reading the phrase "direct physical loss of or damage to property", it is reasonable for the Plaintiffs to conclude that "physical loss" does not unambiguously mean "physical damage".

57. The definition of "loss" in Merriam-Webster includes the concept of "privation", i.e., "the harm or privations resulting from losing or being separated from … something: and the "failure to … utilize". Merriam-Webster also defines "loss" as "the partial or complete deterioration or absence of a physical capability or function". *Loss,* MERRIAM WEBSTER DICTIONARY, https://merriam-wesbter.com/dictionary/loss (last visited March 3, 2022).

58. The Connecticut Appellate Court has stated that "[t]o determine the common, material, and ordinary meaning of an undefined term, it is proper to turn to the definition found in a dictionary." *New London City Mut. Ins. Co. v. Zachem*, 145 Conn. App. 160, 166 (2013).

59. When interpreting the Policy, it is reasonable for the Plaintiffs to regard dictionary definitions as useful guideposts in determining the meaning of "direct physical loss of, or damage to property".

60. Using the Merriam-Webster Dictionary, when reading the phrase "direct physical loss of or damage to property", it is reasonable for Plaintiff to interpret "loss" as "the harm or privations resulting from losing or being separated

from …" property at a covered location and/or "failure to … utilize" covered property.

## The Impact of the Pandemic

61. Loss of use of property due to the natural disaster of the Pandemic constitutes direct physical loss of or damage to property for purposes of first-party property insurance.

62. As the drafter of the Policy, if Defendant had wished to exclude from coverage loss of use of property because of a natural disaster such as a pandemic that has not been physically contaminated, altered or deformed, it could have used explicit language stating such a definition, but it did not do so.

63. As a result of the Pandemic, Plaintiff has incurred Business Interruption loss, Expense to Reduce Loss, Extra Expense and loss of Rental Value.

## Plaintiff Submitted Notice of Loss to Defendant and Was Wrongfully Denied Coverage

64. Plaintiff submitted a notice of loss to Defendant due to the Pandemic. The Defendant denied those claims. The denial letter is attached hereto and incorporated by reference as *Exhibit 3*.

65. Upon information and belief, Defendant is using a form denial letter to deny coverage to all its insureds with policies similar to Plaintiff's and is otherwise uniformly refusing to pay insureds under their standard policies for loss and damage related to the Pandemic.

DANAHERLAGNESE, PC • 21 OAK STREET, HARTFORD, CT 06106 • (860) 247-3666

66. Upon information and belief, Defendant did not engage in any investigation of the Covered Property related to the claimed losses at the Covered Property.

## VI. LEGAL CLAIMS FOR RELIEF

### Count I – Breach of Contract

67. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

68. The Policy is a contract under which Defendant was paid premiums in exchange for its promise to pay Plaintiff's losses for claims covered by the Policy.

69. Pursuant to the Policy, Defendant agreed to pay for the insured's actual Business Interruption loss sustained due to the necessary suspension of its operations during the "period of restoration".

70. Plaintiff has incurred loss resulting from necessary interruption of business including cancellations of different events caused by direct physical loss by a peril covered by the Policy (the Pandemic) during the term of the Policy.

71. Plaintiff has complied with all applicable provisions of the Policy and/or those provisions have been waived by Defendant, or Defendant is estopped from asserting them, and yet Defendant has abrogated its insurance coverage obligations pursuant to the Policy's terms.

72. By denying coverage for any Business Interruption losses incurred by Plaintiffs in connection with the Pandemic and ensuing orders, Defendant has breached its coverage obligations under the Policy.

15

73. Defendant also agreed to pay necessary Extra Expense that its insured incurred to continue the operation of Plaintiff's business or facility that would not have been incurred had there been no loss or damage by perils covered by the Policy.

74. Due to the Pandemic, Plaintiff has incurred Extra Expense at its Covered Property. Plaintiff has complied with all applicable provisions of the Policy and/or those provisions have been waived by Defendant, or Defendant is estopped from asserting them, and yet Defendant has abrogated its insurance coverage obligations pursuant to the Policy's clear and unambiguous terms.

75. By denying coverage for any Extra Expenses incurred by Plaintiff in connection with the Pandemic, Defendant has breached its coverage obligations under the Policy.

76. Defendant agreed to pay Expense to Reduce Loss including such expenses as are necessarily incurred for the purpose of reducing any Business Interruption loss under the Policy.

77. Due to the Pandemic, Plaintiff incurred Expenses to Reduce Loss at its Covered Property. Plaintiff has complied with all applicable provisions of the Policy and/or those provisions have been waived by Defendant, or Defendant is estopped from asserting them, and yet, Defendant has abrogated insurance coverage obligations pursuant to the Policy's terms.

78. By denying coverage for Expenses to Reduce Loss incurred by Plaintiff, Defendant has breached its coverage obligations under the Policy.

79. Defendant agreed to pay for the Insured's loss of Rental Value including loss sustained by the Insured resulting directly from the necessary untenantability, during the period of restoration, caused by loss, damage or destruction by the Pandemic. Due to the Pandemic, Plaintiff incurred expenses in connection with reasonable steps to protect Covered Property.

80. Plaintiff has complied with all applicable provisions of the Policy and/or those provisions have been waived by Defendant, or Defendant is estopped from asserting them, and yet Defendant has abrogated its insurance coverage obligations pursuant to the Policy's clear and unambiguous terms.

81. Defendant's coverage form provides coverage for Sue and Labor expenses incurred by the Insured.

82. Due to the Pandemic, Plaintiff incurred Sue and Labor expenses. Plaintiff has complied with all applicable provisions of the Policy and/or those provisions have been waived by the Defendant, or Defendant is estopped from asserting them, and yet Defendant has abrogated its insurance coverage obligations under the Policy.

83. By denying coverage for Sue and Labor expenses incurred by Plaintiff, Defendant has breached its obligations under the Policy.

84. As a result of Defendant's breaches of the Policy, Plaintiff has sustained substantial damages for which Defendant is liable, in an amount to be established at trial.

DANAHERLAGNESE, PC • 21 OAK STREET, HARTFORD, CT 06106 • (860) 247-3666

### COUNT II – Breach of The Covenant of Good Faith and Fair Dealing

85. Plaintiff repeats and realleges the preceding paragraphs as though fully set forth herein.

86. In Connecticut, the Defendant is bound by the implied contractual covenant of good faith dealing.

87. The Plaintiff and Defendant are parties to a contract under which the Plaintiff reasonably expected to receive certain benefits; the Defendant engaged in conduct that injured the Plaintiff's right to receive those benefits; and when committing the acts by which they injured the Plaintiff's rights to receive benefits they reasonably expected to receive under the contract, the Defendant acted in bad faith.

88. The Defendant violated the covenant of good faith and fair dealing by using a predetermined decision not to cover any claim; failing to properly inquire into relevant facts supporting their denial; failing to take the appropriate procedures for handling Plaintiff's claim; failing to advise Plaintiff as to its position regarding their notice of claim; declining to make clear, and good faith efforts to resolve the contractual relationship between Plaintiff and Defendant.

### VII.    REQUEST FOR RELIEF

WHERFORE, SKM Restaurants, Inc. d/b/a Toad's Place respectfully requests that the Court enter judgment in its favor and against Lexington Insurance Company as follows:

    a.    For a judgment against Lexington Insurance Company

    for the causes of action alleged against it;

 b. For compensatory damages in an amount to be proven at trial;

 c. For pre-judgment and post-judgment interest at the maximum rate permitted by law;

 d. For Plaintiff's attorneys' fees;

 e. For Plaintiff's costs incurred;

 f. For punitive damages; and

 g. For such other and further relief as the Court deems just and proper.

## VII. **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury on all matters so triable.

**Respectfully submitted,**
**Attorneys for Plaintiffs**

By: */s/ R. Cornelius Danaher, Jr.*
 R. Cornelius Danaher, Jr. (ct5350)
 Calum B. Anderson (ct07611)
 Thomas N. Lyons, III (ct26937)
 Thomas J. Plumridge (ct29394)
 DANAHERLAGNESE, PC
 21 Oak Street, Suite 700
 Hartford, Connecticut 06106
 Telephone: 860-247-3666
 Fax: 860-547-1321
 Email: ndanaher@danaherlagnese.com
   canderson@danaherlagnese.com
   tlyons@danaherlagnese.com
   tplumridge@danaherlagnese.com

J. Tucker Merrigan
SWEENEY MERRIGAN LAW, LLP
268 Summer Street, LL
Boston, MA 02210
Telephone: 617-391-9001

Allan Kanner
KANNER & WHITELEY, LLC
701 Camp Street
New Orleans, LA 70130
Telephone: 504-524-5777